UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ARAFAT ALJUBEH,

    Petitioner,

vs.                                    Case No.  3:22-cv-1180-BJD-PDB
                                              3:18-cr-17-BJD-PDB

UNITED STATES OF AMERICA,

    Respondent.
_____

## ORDER

## I. INTRODUCTION

Petitioner, Arafat Aljubeh, a federal inmate, is proceeding through counsel on a Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Civ. Docs. 1, 5; Crim. Doc. 143)[1] with a supporting memorandum of law (Civ. Doc. 1-1; Crim. Doc. 143-1). The sole claim in his Motion relates to the entry of his guilty plea to one count of money laundering in violation of 18

---

[1] Citations to the record in the civil case will be denoted, "Civ. Doc.," and citations to the record in the criminal case will be denoted, "Crim. Doc." Page numbers are those assigned by the Court's electronic case management system.

The original Motion is signed only by counsel. *See* Civ. Doc. 1 at 13. Counsel later docketed a filing labeled "Amended Petition," but the filing is another copy of the original Motion with Petitioner's signature. The Court will cite to the original Motion.

U.S.C. § 1956(a)(1)(B)(i). *See* Civ. Doc. 1 at 5. Civ. Doc. 1-1 at 1–2. *See also* Crim. Doc. 88 at 1–2. Petitioner alleges that his attorneys, Glenn Seiden and A. Russell Smith, were ineffective by misadvising him about the immigration consequences of pleading guilty, in contravention of the standard set forth in *Padilla v. Kentucky*, 559 U.S. 356 (2010). *See* Civ. Doc. 1-1 at 1.

On direct appeal, Petitioner raised this ineffective assistance of counsel claim and also argued his plea was not knowing and intelligent. *See* Civ. Doc. 8-1 at 4, 8, 14. In a *per curiam* opinion, the Eleventh Circuit affirmed Petitioner's conviction and sentence, finding his plea was made knowingly and intelligently and there was "no plain error in the Rule 11 colloquy." *See United States v. Aljubeh*, No. 20-13900, 2021 WL 3283031, at *2 (11th Cir. Aug. 2, 2021). However, the Eleventh Court declined to address the *Padilla* issue, finding "the facts necessary to resolve [that] ineffective-assistance claim [were] not plain from the face of the Rule 11 plea hearing transcript," and such a claim was more suited for resolution through a proceeding under § 2255 so a factual record could be developed. *Id.* at *1–2. The court observed that, with respect to potential immigration consequences of Petitioner's plea, "counsel's explanation to the district court [at the Rule 11 plea hearing] was somewhat muddled and even apparently self-contradictory at times," but it was not clear from the

transcript whether counsel misled Petitioner or provided incorrect advice. *Id.* at *1.

Given Petitioner's allegations in his § 2255 Motion, this Court instructed Mr. Seiden and Mr. Smith to answer interrogatories under oath and to share any information or records bearing on Petitioner's claim. *See* Order (Doc. 3). Additionally, the Court ordered that the Government, in its Response, address specific questions related to Petitioner's deportation status and the relevance of any potentially incorrect advice Petitioner may have received from an immigration attorney. *Id.* Mr. Smith and Mr. Seiden answered the interrogatories (Civ. Docs. 6, 7) and provided supporting documentation (Civ. Doc. 6 at 7–9; Civ. Doc. 7-1). Respondents filed a Response (Doc. 8), and Petitioner filed a Reply (Doc. 11).

Under § 2255 and Rule 8(a) of the Rules Governing § 2255 Proceedings,[2] and in accordance with Petitioner's request, the Court has considered the need for an evidentiary hearing and determines that a hearing is unnecessary. *See Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015) ("The district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the prisoner is

---

[2] Rule 8(a) of the Rules Governing § 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

entitled to no relief.'"). *See also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that a § 2255 movant is not entitled to a hearing "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible"). Thus, the Motion is ripe for review.

## II. STANDARD OF REVIEW

A person in federal custody may move to vacate, set aside, or correct his sentence on one of four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The movant "bears the burden to prove the claims in his § 2255 motion." *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015). *See also Beeman v. United States*, 871 F.3d 1215, 1221 (11th Cir. 2017).

The United States Constitution provides criminal defendants the right to the effective assistance of counsel. *See* U.S. Const. amend. VI. As such, a claim that a criminal defendant has received the ineffective assistance of counsel in violation of the Sixth Amendment may properly be brought in a collateral proceeding under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To establish the ineffective assistance of counsel, a petitioner must

satisfy two prongs: (1) that his counsel's conduct amounted to constitutionally deficient performance; and (2) that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Martin v. United States*, 949 F.3d 662, 667 (11th Cir. 2020).

The two-part *Strickland* test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Under *Hill*, a petitioner still must show that counsel's performance was deficient, *see id.* at 56–59; *Lynch v. Sec'y Fla. Dept. of Corr.*, 776 F.3d 1209, 1218 (11th Cir. 2015), but to establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *Hill*, 474 U.S. at 59 (footnote omitted); *Lynch*, 776 F.3d at 1218.

In the context of a guilty plea by a noncitizen, "counsel must advise [his client] whether his plea carries a risk of deportation." *Padilla*, 559 U.S. at 374. In circumstances where the "deportation consequence is truly clear," defense counsel must give correct advice to a noncitizen client. *Id.* at 369. However, recognizing that "[i]mmigration law can be complex," the *Padilla* Court limits a defense attorney's obligation regarding immigration advice: "When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry

5

a risk of adverse immigration consequences." *Id. See also Martin v. United States*, 949 F.3d 662, 668 (11th Cir. 2020) ("Because of the uncertainty [in the deportation consequence, the petitioner's] counsel was required to advise him only that his pending criminal charges may carry a risk of adverse immigration consequence."); *Robinson v. United States*, No. 21-12457-D, 2021 WL 6551365, at *1 (11th Cir. Nov. 5, 2021) (holding counsel satisfied the dictates of *Padilla* because he "inquire[d] about [the petitioner's] immigration status, [told] him there were possible immigration consequences, and encourage[d] him to seek advice from an immigration lawyer" because the "immigration consequences [were] not succinct and straightforward").

### III. FACTS & DISCUSSION

Despite the Eleventh Circuit's observation that "it is not plain from th[e] plea transcript] that counsel misled [Petitioner] about the effect of his conviction on his immigration status," *Aljubeh*, 2021 WL 3283031, at *1, Petitioner relies solely on the transcript from his plea hearing as proof that his attorneys failed to meet their obligation under *Padilla*. *See* Civ. Doc. 1-1 at 2–4, 5; Civ. Doc. 11 at 3, 6. During the plea hearing, Petitioner's attorneys told the Magistrate Judge that, although Petitioner, a Palestinian, was pleading to a deportable offense, he was exempt from deportation because he had obtained refugee status for his cooperation with the Israeli government. *See* Crim. Doc.

133 at 44–46. According to Petitioner, if not for his attorneys' "absolutely incorrect" advice regarding the immigration consequence of his plea, "he would not have pled guilty but would have insisted on defending against the charges, including [at] trial if necessary," because a return to his country would put him at risk of death. Civ. Doc. 1-1 at 5, 7.

The relevant portion of the transcript of the plea hearing speaks for itself. *See* Crim. Doc. 133 at 44–46. Mr. Seiden informed the Magistrate Judge that Petitioner was "legally deportable, but . . . not deportable under the immigration statutes." *Id.* at 44. Mr. Smith attempted to clarify Mr. Seiden's confusing statement, explaining that Petitioner had obtained refugee status, which meant he was "exempt from deportation," because he was a Palestinian who cooperated with the Israeli government. *Id.* at 45–46. The attorney for the Government also weighed in, telling the Court that, as a citizen of Palestine, there was "no country to deport [Petitioner] to." *Id.* at 45. The Magistrate Judge asked Petitioner whether he "fully investigated and understood any immigration consequences to pleading guilty," after having spoken with immigration lawyers, who "advised [him] what the effect of a guilty plea would be." *Id.* at 46. Speaking for himself in English, and through an interpreter, Petitioner answered "Yes."[3] *Id.*

---

[3] In his memorandum of law in support of his Motion, Petitioner states that he "spoke only Arabic" when he entered his plea. *See* Civ. Doc. 1-1 at 2. The record belies

7

Petitioner contends his attorneys' "very clear and unambiguous" statements at the plea hearing demonstrate "he was given flatly wrong legal advice." *See* Civ. Doc. 11 at 3. The statements are not "very clear and unambiguous," as the Eleventh Circuit noted. More importantly, however, the plea transcript does not capture the advice Petitioner received when he spoke privately with his attorneys before the change of plea hearing. Other evidence elucidates the advice counsel gave Petitioner.

For instance, the written plea agreement suggests Petitioner spoke with his counsel about potential deportation consequences of pleading guilty to money laundering: "The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." *See* Crim. Doc. 88 at 14. Petitioner initialed the page on which this language appears and signed the agreement on June 4, 2019, three days before the plea hearing. *Id.* at 14, 20. At the plea hearing, Petitioner confirmed that he had spoken with his attorneys about the written agreement, and he verified his signature and initials on the document. *See* Crim. Doc. 133 at 56. He further said that a translator "explained everything"

---

this statement, as will be discussed. Regardless, Petitioner does not allege that he misunderstood his attorneys' advice because of a language barrier. *See generally id.*; *see also generally* Doc. 11.

8

in the agreement to him in Arabic, he understood each part of the agreement, and he had no questions about it. *Id.* at 58–59.

The best evidence of the advice Petitioner received comes from his attorneys themselves. Mr. Seiden's and Mr. Smith's responses to the Court's interrogatories show that they discussed potential adverse immigration consequences with Petitioner before he entered his plea. *See* Civ. Docs. 6, 7. Mr. Seiden explains that he is an out-of-state attorney who appeared *pro hac vice* for Petitioner, with Mr. Smith serving as local counsel. *See* Civ. Doc. 7 at 1. Mr. Seiden is not an immigration attorney, but from 2003 to 2011, he worked for a firm that handled "primarily immigration." *Id.* Mr. Seiden asserts he had conversations with Petitioner, mostly with the assistance of an interpreter, about possible deportation, and he advised Petitioner "multiple times that conviction in this matter would be considered an aggravated felony . . . and he *would* be subject to removal for the conviction." *Id.* at 2–3. Petitioner told Mr. Seiden that he (Petitioner) "had a withholding of removal order," but Mr. Seiden informed Petitioner that "should that withholding of removal be withdrawn or the order otherwise vacated for some reason, he would be subject to removal." *Id.* at 3.

Mr. Seiden claims that he confirmed Petitioner was granted a withholding of removal:

9

> During [Petitioner's] case and before entry into the plea agreement, I became aware that he was subject to a Withholding of Removal order, despite the fact that he was otherwise deportable/removable even at that time by his own admission to me. He stated that he was deemed deportable due to either unlawful entry or overstay, as well as potentially also his previous conviction for Conspiracy to Traffic in Stolen Goods, from which he was on supervised release at the time of the instant offense. I spoke with colleagues from my time at [the primarily-immigration firm] to confirm [Petitioner's] status and the Withholding of Removal order. They confirmed [Petitioner's] statements and understanding, as well as my own understanding.
>
> As this was a unique situation, I additionally advised [Petitioner] to speak with his own immigration counsel—either someone new or someone with whom he had worked during his previous interactions with immigration court. I did not have any contact with that counsel.
>
> . . . .
>
> In addition, Probation also confirmed that "[a]ccording to immigration authorities [Petitioner] was granted a [W]ithholding of [R]emoval in December 2009[, and] due to the current political climate in Palestine and the Withholding of Removal, the defendant *will not be deported* in response to this offense."

*Id.* at 1–2 (emphasis added). Mr. Seiden further asserts that his understanding from his numerous discussions with Petitioner was that "immigration consequences played no or almost no role in his ultimate decision to plead guilty." *Id.* at 3. Rather, Petitioner's primary concern was to ensure that his son, whose bank accounts were used for the criminal enterprise, would not be prosecuted as an accomplice to money laundering. *Id.* at 3–4.

Mr. Smith's answers to the Court's interrogatories align with Mr. Seiden's. He asserts that as local counsel, he did not participate in strategic decisions, including plea negotiations, but he met with Petitioner on two occasions without Mr. Seiden's presence. *See* Civ. Doc. 6 at 2–3. On the first occasion, March 26, 2018, no interpreter was present because Mr. Seiden had assured Mr. Smith that Petitioner was proficient in the English language. *Id.* at 3. Mr. Smith's experience in speaking with Petitioner was that he indeed "had no real problem with conversational English," but for the second meeting, he arranged an interpreter because Petitioner expressed some misunderstandings when Petitioner "didn't like what [Mr. Smith] was saying." *Id.*

At the March 26, 2018 meeting, Mr. Smith asked Petitioner about his citizenship, and Petitioner "insisted that he could not be deported." *Id.* at 4. Petitioner would not elaborate but said he would explain his situation to Mr. Seiden. *Id.* Mr. Smith spoke with the Assistant United States Attorney the next day, and she said the Government would be seeking deportation. *Id.* Mr. Smith immediately informed Mr. Seiden through an email, saying, "[T]he [G]overnment believes our client has a *Padilla* problem." *Id.* at 7. Mr. Smith did not have further involvement in conversations related to Petitioner's

11

immigration status, and he did not meet with Petitioner again until over one year later, on May 29, 2019. *Id.* at 3, 5.

On that date, Mr. Smith and Petitioner reviewed the written plea agreement. *Id.* According to Mr. Smith, Petitioner told him that an immigration attorney—not Mr. Seiden—advised him that "he was not deportable" because he had been granted refugee status due to his collaboration with the Israeli government. *Id.* at 3–4, 3 n.1. Despite Petitioner's conviction that he could not be deported, Mr. Smith asked Petitioner, through an interpreter, if he "understood that, according to the plea agreement, he could be deported as a result" of entering a plea. *Id.* at 5. Petitioner "once again[] insisted he could not be deported" because he had been "awarded refugee status." *Id.* Mr. Smith recounts the following back-and-forth occurred during that conversation:

> I explained to [Petitioner] that the [G]overnment had told us that [Petitioner] had not qualified for any traditional exemptions to deportation, such as refugee/asylum status. [Petitioner] again assured me that it was not a problem. I expressed concerns that his understanding of his status might not be correct and suggested he might want to make sure before changing his plea. I asked him if he wanted a referral to another immigration lawyer, to get a second opinion. He refused. I asked him if he wanted me to contact his immigration counsel to confirm his status. He refused to tell me who his immigration counsel was and assured me that Mr. Seiden was handling the matter. [Petitioner] was insistent that he did not need immigration advice and was dismissive of my efforts to address the issue.

*Id.* In accord with Mr. Seiden's understanding, Mr. Smith contends that Petitioner "showed an absolute lack of concern about his immigration status" in connection with his decision to enter a guilty plea. *Id.* at 6.

Neither Mr. Seiden nor Mr. Smith spoke with the immigration attorney Petitioner consulted, and it appears Petitioner refused to disclose the identity of the immigration attorney to either of them. *See id.*; Civ. Doc. 7 at 2. Additionally, as Petitioner explains in his Reply, neither defense counsel, the Assistant United States Attorney, nor Probation has been able to obtain a copy of the purported Withholding of Removal order. *See* Civ. Doc. 11 at 2–3.

In his Motion, Petitioner does not directly address the Withholding of Removal order but claims that he "is not exempt from deportation as a refugee and faces deportation to Palestine." Civ. Doc. 1-1 at 4. In his Reply, Petitioner explains that any Withholding of Removal order "confers not a privilege to remain in the United States but only an immunity against removal to a particular country," and "there is nothing in a [W]ithholding of [R]emoval order [that] prevents the United States from removing a Palestinian to either Israel or Jordan." Civ. Doc. 11 at 4 (quoting in part *Viracacha v. Mukasey*, 518 F.3d 511, 514 (7th Cir. 2008)). However, Petitioner does not assert or show that any other country is a viable option for deportation. *See* 8 U.S.C. § 1231(b)(1)(C). At the plea hearing and sentencing, the Assistant United States Attorney and

13

Probation, respectively, confirmed that there was "no country to deport [Plaintiff] to" because of the political climate in Palestine. Crim. Doc. 133 at 45; Crim. Doc. 116 ¶ 54 (sealed).

It is evident from the record that the precise immigration consequences for Petitioner were unclear when he entered his plea. Although all parties were of the understanding that Petitioner was subject to a Withholding of Removal order, no one had seen it or apparently understood its impact on Petitioner's deportation status given he was Palestinian. The precise immigration consequence remains unclear to this day: When the Government filed its Response to Petitioner's Motion on February 21, 2023, it advised, "ICE has not announced whether [Petitioner] will be deported as a result of his conviction." *See* Civ. Doc. 8 at 14.

Based on the record, given the uncertainty of the deportation consequence in Petitioner's case, Petitioner's counsel satisfied their obligations under *Padilla*: they inquired about Petitioner's citizenship; advised him he would be subject to deportation based on this conviction; and further advised him to consult with an immigration lawyer regarding the purported Withholding of Removal order. *See* Civ. Docs. 6, 7. Petitioner does not address the advice he received from counsel before the plea hearing. Rather, he argues counsel's statements at his plea hearing were incorrect.

14

As an initial matter, it is not entirely clear counsel's statements indeed were incorrect based on information available at the time and based on information provided by Petitioner himself. Petitioner was adamant in conversations with his attorneys that he could not be deported, at least to Palestine, because there was a Withholding of Removal order in place. Petitioner's statements to his attorneys cannot be ignored in assessing whether they provided the effective assistance of counsel under *Strickland*. *See* 466 U.S. at 691 ("Counsel's actions are usually based, quite properly, on informed strategic choices made by the [client] and on information supplied by the [client].").

Although no Withholding of Removal order has been obtained or filed with the Court, Mr. Seiden asserts that he independently confirmed Petitioner was subject to a Withholding of Removal order. *See* Civ. Doc. 7 at 2, 3. When Petitioner entered his plea, the Assistant United States Attorney expressed her understanding from speaking with an ICE agent was that Petitioner could not be deported because "there was no country to deport him to." Crim. Doc. 133 at 45. Additionally, as stated in the Presentence Investigation Report dated September 26, 2019, Probation also independently confirmed that immigration authorities represented Petitioner would not be deported because

15

of a Withholding of Removal order and the political climate in Palestine. *See* Crim. Doc. 116 ¶ 54 (sealed).

Assuming *arguendo* that counsel's statements at the plea hearing were factually incorrect, those statements are not representative of, nor do they capture, the advice they gave their client. As noted, Mr. Seiden and Mr. Smith told their client he could be deported if he were convicted and not subject to a Withholding of Removal order, and they both advised him that, because of the "unique situation," he should consult an immigration attorney. *See* Civ. Doc. 6 at 5; Civ. Doc. 7 at 2. Mr. Smith even told Petitioner he was concerned that Petitioner's understanding of his status was not correct and encouraged him to seek another opinion from a different immigration attorney and offered to speak to the immigration attorney himself or refer Petitioner to one. *See* Civ. Doc. 6 at 5. Petitioner refused his counsel's advice to seek clarification from an immigration expert about his exposure to deportation. *Id.*

It remains unclear whether Petitioner in fact consulted an immigration lawyer despite his representations to Mr. Seiden, Mr. Smith, and the Court that he had done so. Regardless, the relevant conversations are those Petitioner had with his counsel representing him in the criminal matter. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defense."); *Strickland*,

466 U.S. at 684–86, 690–91 (analyzing the Sixth Amendment's guarantee of a right to counsel for a person accused of a crime and defining "effective assistance" as it relates to the attorney appointed or retained to defend a client accused of a crime). Mr. Seiden and Mr. Smith satisfied their limited obligation under *Padilla* because the immigration consequence of Petitioner's plea was unclear, and they indisputably advised Petitioner "that his pending criminal charges *may* carry a risk of adverse immigration consequence." *See Martin*, 949 F.3d at 668 (emphasis added). *See also Padilla*, 559 U.S. at 369. That Petitioner rejected, disbelieved, or contested his counsel's advice does not mean they were ineffective under *Padilla* and *Strickland*.

Because the Court finds counsel's performance was constitutionally effective, the Court will not address *Strickland*'s prejudice prong. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the [petitioner] makes an insufficient showing on one.").

## IV. CONCLUSION

Finding Petitioner advances no argument warranting relief under 28 U.S.C. § 2255, it is hereby **ORDERED**:

1. Petitioner's Motion (Civ. Docs. 1, 5; Crim. Doc. 143) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk** is directed to enter judgment denying the Motion and dismissing the action with prejudice, terminate any pending motions as moot, and close the file.

3. If Petitioner appeals this Order, **the Court denies a certificate of appealability**.[4] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of December 2025.

_____
BRIAN J. DAVIS
United States District Judge

---

[4] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

Jax-6
c:
Counsel of Record